Sterling Beckwith and Frances Beckwith v. Commissioner.
Beckwith v. Commissioner
Docket No. 2606-62.
United States Tax Court
T.C. Memo 1964-254; 1964 Tax Ct. Memo LEXIS 85; 23 T.C.M. (CCH) 1537; T.C.M. (RIA) 64254; September 28, 1964
John F. Creed, 1 N. LaSalle St., Chicago, Ill., and Donald Flynn, for the petitioners. Donald J. Forman, for the respondent. MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: Respondent determined deficiencies in the petitioners' income tax for the years 1958, 1959 and 1960 in the respective amounts of $465.54, $980.66 and $1,212.81. In an amendment to his answer the respondent claimed an additional income tax deficiency for 1959 in *86 the amount of $288. The issues are (1) whether petitioner was engaged in the business of farming in the years 1958 through 1960 so that losses incurred by him in the operation of a farm during those years would be deductible by him; (2) whether petitioner is entitled to nonrecognition of gain realized from the sale of his residence in 1959 within the meaning of section 1034 of the Internal Revenue Code of 1954; [1] and (3) whether petitioner is entitled to deduct as business expenses certain insurance premiums (workmen's compensation insurance and liability and fire insurance) paid in 1959 and 1960. Findings of Fact Some of the facts were stipulated and they are so found. Sterling Beckwith and Frances Beckwith, husband and wife, filed their joint income tax returns for the years 1958, 1959 and 1960 with the district director of internal revenue at Chicago, Illinois. Sterling Beckwith will hereinafter be called the petitioner. Petitioner is an engineer, with degrees in general engineering and electrical engineering. About 1935 petitioner obtained *87 employment in Milwaukee, Wisconsin, with Allis-Chalmers, where his duties consisted of designing large rotating machinery. In April 1951 petitioner purchased a residence in Lake Forest, Illinois, for $40,500, and during the years 1951 through 1959 he claimed and was allowed depreciation deductions totaling $1,920 for a one-sixth use of the residence in his engineering business. The Lake Forest residence, which had an office and a small area for shop use, subsequently became inadequate for petitioner's engineering business, and after inspecting 12 to 15 farms within a reasonable distance from the area in which he conducted his engineering business, petitioner on or about October 23, 1958, contracted to purchase for $87,500 a tract of land consisting of about 80 acres located in Libertyville, Illinois. The seller agreed in the contract to convey the property on November 10, 1958. The warranty deed to the Libertyville property was notarized on November 8, 1958 and filed for record on November 10, 1958. The closing statement for the transfer of the Libertyville property was dated November 10, 1958. On May 19, 1959 petitioner contracted to sell his Lake Forest residence for a price *88 of $60,000, later reduced to $59,000. On November 10, 1959 petitioner executed a warranty deed and conveyed his Lake Forest residence to the purchaser. The buildings on the Libertyville property included a five room house, a barn that was 50 feet by 90 feet, and several other structures, including a silo, a corn crib (about 500 bushels), a chicken shed, a wheat storage shed, a pump house and a machinery or tool shed (about 24 feet by 48 feet). At the time of acquisition of the approximately 80 acre tract, 47.5 acres were tillable, and 37.9 acres out of the tillable portion were held in reserve under a soil conservation contract entered into by the prior owner with the United States Department of Agriculture and continued by petitioner. Petitioner did not renew the soil conservation contract when it subsequently terminated in 1961. About 27 or 28 acres of the Libertyville tract consisted of marshland and some wooded area. The prior owner had drained some of the marshland so that it was suitable for farming purposes. The purchase price of $87,500 paid by petitioner for the Libertyville property included 22 items of equipment, most of which was farm equipment. Soon after acquiring *89 the Libertyville tract, petitioner put a concrete floor and ceiling in the machinery shed and insulated the entire building. Petitioner equipped the machinery shed as an engineering laboratory, installed a welding machine in the pump house, and installed some engineering equipment in the barn. During the years 1958, 1959 and 1960 petitioner spent about 60 hours a week on his engineering work, and, in addition, devoted some of his time to other personal development projects. One such project was a sixrotor helicopter, which petitioner had been experimenting with since about 1935 or 1936. A two-rotor air cushion vehicle was a part of petitioner's multi-rotor project, and after he acquired the Libertyville property in 1958 he conducted three or four flights with the two-rotor vehicle on the property. Prior to 1958 petitioner had conducted flights with both the six-rotor and the two-rotor vehicles on property made available through friends. Petitioner was also interested in (1) a project involving the automatic guidance of tractors and (2) experimental seed planting. Petitioner purchased seed in the amount of $20 in 1959 and 1960 and, after purchasing a corn planter in 1959 for $125, *90 he planted about nine acres in corn in both years. Petitioner did not harvest the corn crop in either 1959 or 1960. The conservation crop was a hay crop, which petitioner did not harvest or put to grazing uses during the years before us. No livestock was kept on the Libertyville property by petitioner during the years before us. Petitioner did not employ a farm manager or any regular farm employees, but during 1959 and 1960 petitioner on occasion hired part-time help to cut and mow the soil conservation area or to perform general duties on the property. Apart from checks and bills, the petitioner did not maintain regular books and records for any farming operations during the years 1958 through 1960. The only income received and reported by petitioner as farm income in 1959 and 1960 was in the amount of $416.90 and $521.81, respectively, which represented payments under the soil conservation contract. The schedule of farm income and expense (Schedule F) of petitioners' returns for 1958 through 1960 showed the following: 1958
1959
1960
Farm Income
$ 416.90 $
522.11 *
Less: Farm Ex-
pense
$ 503.39
1,374.13
2,575.19
Depreciation
920.00
2,684.00
2,622.00
Net Loss
($1,423.39)
($3,641.23)
($4,675.08)
*91 In the statutory notice of deficiency the respondent determined that a portion of the deductions claimed by petitioner in Schedule F as farm expenses and depreciation were attributable to petitioner's engineering business and allowed a deduction for such portion. After the allowance of the engineering expenses and depreciation, the farm losses originally claimed by petitioner were reduced to $595.95, $805.83 and $2,476.08 for the years 1958, 1959 and 1960, respectively. The remaining farm losses still in dispute consist mainly of depreciation on farm machinery and expenditures for occasional labor on the premises. Respondent disallowed these losses on the ground that petitioner failed to show that he was in the business of farming. Respondent disallowed deductions for certain insurance payments claimed by petitioner in Schedule C in 1958, 1959 and 1960 in the respective amounts of $104.25, $119 and $346.68 on the grounds that (a) they were unsubstantiated and/or (b) they were not ordinary and necessary business expenses. The amounts now remaining in dispute are $19 in 1959 and 1960, representing workmen's compensation premium, and $227.48 in *92 1960, representing liability and fire insurance premiums. Respondent also determined that the gain realized by petitioner from the sale of his Lake Forest residence in 1959 was includable in taxable income for that year on the ground that the transaction did not qualify under the nonrecognition of gain provisions of section 1034. It has been stipulated that the gain realized by petitioner from the sale of his Lake Forest residence in 1959 was $4,177. Opinion The first issue is whether petitioner is entitled to deduct the Libertyville farm losses in 1958, 1959 and 1960. To prevail, petitioner must show that he operated the farm in those years as a business with a true intention of making a profit. Norton L. Smith, 9 T.C. 1150. Petitioner was a graduate engineer who for many years prior to 1951 was employed in an engineering capacity. In 1951 he purchased the Lake Forest residence, where he used a portion of the premises in his business as a consulting engineer. He testified that subsequently the office and shop space in his Lake Forest residence "became inadequate for *93 the business I was doing." In 1958 petitioner purchased the Libertyville property, which with its house and outlying buildings and some 80 acres of land, provided the needed space. Petitioner's actions upon taking possession of the Libertyville property do not even remotely show that he was concerned with farm operations. It is true he bought land that had once been farmed and farm machinery and the land was subject to a soil conservation contract. He immediately remodeled the several farm buildings to make them suitable for his engineering purposes and equipped them with sundry types of engineering equipment. He testified that "I think I started moving it [the engineering equipment] in rather soon because I had some work on which this was being used for different customers - for a customer who required that some of it be moved in right away." Petitioner also needed space for his personal engineering projects, which included a 6-rotor helicopter he had been working on for years and a 2-rotor air cushion vehicle. He conducted several flights with the latter vehicle on the Libertyville property. Petitioner's other projects were (1) the automatic guidance of tractors and (2) experimental *94 seed planting. It fairly appears from the record and the contract of purchase whereby petitioner acquired the Libertyville real property and some few items of farm machinery that this was a package deal. The former owner had one price for the realty and personal property which petitioner had to accept if he wanted to buy the realty. Petitioner's actual farming operations in these years were not impressive. Out of the 47.5 tillable acres, 37.9 acres were held in reserve under a Federal soil conservation contract. On the remaining tillable land he planted about nine acres of corn in 1959 and 1960, [2] which he did not harvest in either of the two years. Neither did petitioner harvest the hay crop on the 37.9 conservation acres in these two years. There was no livestock on the property during this period, and petitioner testified he never intended to raise or breed farm animals. Petitioner kept no regular books and records for any farming operations during the years before us, and, apart from the payments he received under the conservation contract in 1959 and 1960 in the amounts of $416.90 and $521.81, respectively, it does not appear that petitioner received any income from his farm *95 operations. The soil conservation contract, which had been put on the land by a former owner, (and not renewed by petitioner) is of no significance on the issue of whether petitioner was in the farming business in the years in question. In each of the years 1961 and 1962 petitioner reported rental income of $1,200 received from an engineering company which used three of petitioner's buildings for a project which petitioner described as a "noisy operation" carried on both indoors and outdoors. Petitioner's actual farm operations resulted in losses in both of those years. Petitioner testified that in 1963 he planted a soybean crop which produced income of $1,473.94 and that other farm income (feed grain program, hay sales and certain storage payments) brought the total for 1963 to $2,665.12. Petitioner also testified that after expenses and depreciation of $1,864.50, he realized a farm profit of $800.62. Sometimes a taxpayer's activities of a business nature during years after the years in issue are some indication of *96 prior entry into that business. We see nothing in petitioner's activities with respect to this land during the years 1961 and 1962, when much of the premises was rented to an engineering firm, that would indicate he was engaged in farming the land for the years 1958 through 1960. The most the testimony with respect to the later years would show would be a possible entry into the farming business in 1963. We are unable to find that petitioner intended to conduct a farming operation in the years before us with an intention of making a profit. His dominant concern in purchasing the Libertyville property was obviously to obtain a residence and to get urgently needed space to conduct his various engineering pursuits. Petitioner's expenses in connection with his engineering business activities on the property have been properly allowed. But we are convinced that the actual farm operations were insignificant in the amount of time and concern devoted to them. We do not believe that petitioner reasonably, and in good faith, sought to conduct a farming operation with any profit motive in mind. See Godfrey v. Commissioner, - F. 2d - (C.A. 6, July 29, 1964), affirming a Memorandum Opinion of *97 this Court. We hold that the losses involved are not deductible as business losses under section 165. The next issue is whether petitioner is entitled to the nonrecognition of gain provisions of section 1034[3] in connection with the sale of his Lake Forest residence in November 1959. Respondent's first argument is that the petitioner purchased his new residence (Libertyville property) on November 8, 1958 and that the old residence in Lake Forest was sold on November 10, 1959, more than a year later, thus disqualifying such sale under the statute. *98 We are satisfied, however, that the sale of the old residence was within the statutory time limit. The closing statement for the purchase of the Libertyville property, which has been stipulated in evidence as a "true and correct" copy, shows the date of closing as November 10, 1958, and the warranty deed shows that it was filed on November 10, 1958. Respondent argues that title passed on November 8, 1958 because that is the date on which the warranty deed was notarized. In view of the other evidence, we believe that actual passage of title took place on November 10, 1958. Respondent's second argument is that petitioner has failed to qualify under the statute because he has failed to show what part of the old and new residences was used as a "principal residence" and what part was used for other purposes. Section 1.1034-1(c)(3)(ii), Income Tax Regs., provides as follows: (ii) Where part of a property is used by the taxpayer as his principal residence and part is used for other purposes, an allocation must be made to determine the application of this section. *99 If the old residence is used only partially for residential purposes, only that part of the gain allocable to the residential portion is not to be recognized under this section and only an amount allocable to the selling price of such portion need be invested in the new residence in order to have the gain allocable to such portion not recognized under this section. If the new residence is used only partially for residential purposes only so much of its cost as is allocable to the residential portion may be counted as the cost of purchasing the new residence. The regulation is a valid interpretation of the statute. In its report on the Revenue Act of 1951 the Ways and Means Committee stated as follows: Where part of a property is used by the taxpayer as his principal residence and part is used for business purposes or in the production of income (as in the case where a part of the building in which the taxpayer resides is used as a store or office or is rented or in the case of a farm property) allocation must be made to determine the extent to which the new subsection applies. If the old residence is used only partially for residential purposes, a proper allocation of the gain *100 and of the selling price is necessary; only that part of the gain allocable to the residential portion may be not recognized under the new subsection and only so much of the selling price as is allocable to such part of the property need be reinvested in the new residence. If the new residence is used only partially for residential purposes, then only so much of its cost as is allocable to the residential portion is counted as reinvestment for the purpose of the new subsection. [H. Rept. No. 586, 82nd Cong., 1st Sess. 1951-2 C.B. 357, 436.] The adjusted selling price for petitioner's old residence was about $55,000. It appears that during the years 1951 through 1959 petitioner was allowed depreciation deductions of $1,920 based upon the use of one-sixth of his old residence for business use. Consequently, the adjusted sales price to be used in making the computation under section 1034 would be reduced to about $46,000 (i.e. five-sixths of $55,000). [4]
Under the statute, *101 gain from the sale of the old residence is recognized "only to the extent that the taxpayer's adjusted sales price * * * of the old residence exceeds the taxpayer's cost of purchasing the new residence." It is obvious from this record that the Libertyville property of some 80 acres was only partially used for residential purposes, so we must determine how much of the stipulated total cost ($87,500) can be counted as the cost of purchasing the new residence. There is in evidence an allocation of the total cost made by petitioner to (a) his residence consisting of the house and five surrounding acres, (b) equipment, business buildings and land (approximately one acre) surrounding such buildings, and (c) the remaining acreage. Petitioner allocated $34,219.12, $24,044.13 and $30,650 to the above three categories, respectively. [5]
Petitioner's only argument is that if we should determine that he did not operate the farm as a business for a profit then we must find that the entire Libertyville property of some 80 acres, within the exception of the buildings and acreage used *102 for engineering purposes, must be regarded as his new residence for purposes of section 1034. We do not agree with petitioner's either-or argument. We do not believe that petitioner's "residence" can reasonably be said to include some 38 acres under a soil conservation contract and 27 or 28 acres of marshland and wooded area. Moreover, some of this area was used by petitioner in his helicopter experiments, which would certainly detract from its characterization as a residence. We think that the statute contemplates a meaning of residence in its ordinary and commonly understood sense. It appears from the record that petitioner himself only regarded the house itself and five acres about the house as a residence. We accept this as petitioner's new residence within the meaning of the statute. Petitioner allocated $34,219.12 to this portion of the Libertyville property, and even if this allocation were increased significantly, it would still be below the adjusted selling price of the old residence, which we have found to be about $46,000. We find, and so hold, that petitioner is not entitled to the nonrecognition of gain provisions of section 1034. The last issue involves the deductibility *103 of $19 in 1959 and 1960 for workmen's compensation payments and of $227.48 in 1960 representing an allocate portion of liability and fire insurance premiums. As to workmen's compensation payments, petitioner testified it was for "[people] working on the farm, on the 80 acres." Since the farm was not operated as a business for a profit, these insurance payments cannot be regarded as ordinary and necessary business expenses under section 162. Respondent is sustained as to these items. Petitioner testified that he had three policies on the house and other buildings and property, "one fire insurance, one property, another liability." Petitioner allocated one-half of the premiums on these policies to the eight buildings used in his engineering activities and the contents in these buildings. We accept this allocation as a reasonable one. We hold that petitioner is entitled to deduct the premium of $227.48 in 1960 as an ordinary and necessary business expense. Decision will be entered under Rule 50. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.↩
*. Incorrect amount reported.↩
2. Petitioner purchased the Libertyville property in November 1958.↩
3. SEC. 1034. SALE OF EXCHANGE OF RESIDENCE. (a) Nonrecognition of Gain. - If property (in this section called "old residence") used by the taxpayer as his principal residence is sold by him after December 31, 1953, and, within a period beginning 1 year before the date of such sale and ending 1 year after such date, property (in this section called "new residence") is purchased and used by the taxpayer as his principal residence, gain (if any) from such sale shall be recognized only to the extent that the taxpayer's adjusted sales price (as defined in subsection (b)) of the old residence exceeds the taxpayer's cost of purchasing the new residence.↩
4. Moreover, only that part of the stipulated gain allocable to the residential portion of the old residence can qualify for nonrecognition under the statute and the regulations thereunder.↩
5. These amounts total $88,913.25, which appears to include improvements and additions to the new property.↩